T.C. Memo. 2006-160

UNITED STATES TAX COURT

PAUL BI-YANG CHEN AND CHIU-MEI CHEN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15579-04.                    Filed August 8, 2006.

<u>John Gigounas</u>, <u>Edward Simpson</u>, and <u>Gerald Holmes</u>, for
petitioners.

<u>Huong T. Duong</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HOLMES, <u>Judge</u>:  Paul Chen and his wife, Chui-Mei, were both
officers of a closely held business, PCTI.  PCTI was a successful
wholesaler of computer components for a few years, but it began
having a cashflow problem in 1998.  Mr. Chen tried to solve the
problem by committing insurance fraud.  The fraud unraveled, and

both Chens pleaded guilty to a variety of crimes. Neither PCTI nor the Chens reported the proceeds of the fraud as income. The Chens contest the resulting deficiency and fraud penalty. Mrs. Chen seeks innocent spouse relief.

## Background

The Chens came to the United States in 1985 from Taiwan, where Mr. Chen had graduated from college and earned master's degrees in civil engineering and architecture. He had taught high school for 20 years in Taiwan, but after immigrating he switched fields and worked for his brother's computer business. In 1991, he started up his own firm and began wholesaling computer parts under the name PC Team. Within two years, he incorporated that business as PCTI. He was PCTI's sole shareholder and its president, and he named Mrs. Chen vice president and administrator. She worked at PCTI full time, managing the company's inventory and running the business when Mr. Chen was away. She had full authority to sign checks and tax returns on behalf of PCTI, though the parties stipulated that she does not read, write, or speak English.

PCTI made a valid S corporation election in 1995 and was still an S corporation in 1998, the tax year at issue. Its accounting system was not complex--Mr. Chen simply dictated the company's financial transactions to Bo Hua He, PCTI's in-house accountant. Ms. He also prepared many of the checks for the

Chens to sign. These checks were drawn on accounts that PCTI kept at several banks. Mr. Chen kept signature authority over them all, giving Mrs. Chen cosigning authority over only one.

In September 1998, PCTI contracted with Beam Technology, a Singapore company, to buy computer processor chips. The chips were shipped, but then lost in transit. Mr. Chen spotted the opportunity: He submitted a claim to his carrier, Chubb Insurance, stating that PCTI had paid $292,000 for the shipment. This was a lie--PCTI had paid nothing at all. Chubb, relying on Mr. Chen's representation, sent a $287,000 check to PCTI to cover the alleged loss, less a $5,000 deductible. Mr. Chen then directed Mrs. Chen to open a new bank account in the name of Beam Technology. No one ever told Beam that the account existed, and only the Chens had signature authority. Once the account was opened, Mr. Chen signed a check from PCTI labeled "refund prepaid" for $287,000, which Mrs. Chen deposited. We specifically find that the Chens' purpose in opening the account was to make it seem that the insurance proceeds were being used to pay off PCTI's debt to Beam, while allowing them unfettered access to the money.

After the check cleared, Mr. Chen transferred $154,409.28 back to PCTI. He directed Ms. He to record the money on PCTI's books as payment on an outstanding account receivable from Citirom, one of PCTI's customers--one that had several

outstanding invoices in 1998, and was having trouble making payments to PCTI. He then transferred another $130,000 from the Beam account into Mrs. Chen's personal account. She in turn signed checks totaling $80,000 from her account to PCTI, only to receive the money back from PCTI a few days later. She gave the other $50,000 to Mr. Chen to cover some of his gambling losses. (The Chens credibly testified that Mr. Chen had a severe gambling compulsion.)

The Chens used an accounting firm, Chang Accountancy Corp., to prepare both their own and PCTI's 1998 tax returns. Mr. Chen did not disclose PCTI's receipt of the Chubb insurance proceeds to Chang, so the $287,000 in proceeds was not reported on PCTI's return and did not flow through to the Chens' own joint return.

Chubb grew suspicious and began an investigation, eventually referring the matter to law enforcement. In March 2001, Mr. Chen pleaded guilty to money laundering and filing a false tax return; likewise, Mrs. Chen pleaded guilty to wire fraud, aiding and abetting Mr. Chen's crime, and filing a false tax return. In their plea agreements, the Chens agreed to pay $287,000 restitution to Beam Technology, and they paid $40,000 of the deficiency owed to the IRS. The Commissioner determined a deficiency based on the Chens' failure to include the proceeds of

the fraud in their reported income.  He also determined a fraud penalty under section 6663.[1]

The Chens contest both the deficiency and the penalty.  Mrs. Chen also asserts as a defense that she is an innocent spouse, on the grounds that she could not communicate in English; had nothing to do with the 1998 tax return other than signing the return; wrote checks only at Mr. Chen's direction; and did not benefit from the additional income.  The Commissioner denied her request as inconsistent with her signed plea agreement, in which she had admitted participating in her husband's fraudulent scheme.  Mrs. Chen believes the Commissioner abused his discretion in denying her request for innocent spouse relief.

Both Chens also assert a statute-of-limitations defense. The Commissioner admits that he sent the notice of deficiency more than three years after they filed their 1998 tax return, but argues that the Chens' fraud makes the notice of deficiency valid.

The Chens also argue that even if they did commit fraud, the amount of their understatement is exaggerated by the IRS.  They argue that PCTI was already taxed on a portion of the proceeds, and argue as well that if the fraudulently obtained proceeds are no longer applied to the Citirom account receivable, that account

---

[1] Section references are to the Internal Revenue Code; Rule references are to the Tax Court Rules of Practice and Procedure.

should be considered a bad debt and give rise to an offsetting deduction from PCTI's income.

Trial was held in San Francisco, and the Chens were California residents when they filed their petition.

## Discussion

### I. Fraud

We first consider whether the Commissioner has proven that the Chens committed fraud, because this will resolve the threshold question of the statute-of-limitations defense.  A fraud penalty under section 6663(a) requires proof that there is an underpayment of tax required to be shown on a return that the underpayment is due to fraud.  Miller v. Commissioner, T.C. Memo. 1989-461.  The Commissioner has the burden of proving fraud by clear and convincing evidence.  Sec. 7454(a); Rule 142(b).

The Commissioner shoulders the first part of his burden with a stipulation--the parties agree that the Chens underpaid their 1998 taxes:  "The $287,000 [of insurance proceeds] * * * was not reported as income on Petitioners' 1998 Form 1040."  The second part of the Commissioner's burden is to show that the Chens' underpayment was due to fraud.  We define fraud as the "willful attempt to evade tax", and look at the entire record of a case to see if it exists.  Beaver v. Commissioner, 55 T.C. 85, 92 (1970). The indicia of fraud are numerous and varied, and can include

such circumstantial evidence as: (1) understatement of income; (2) inadequate records; (3) failure to file tax returns; (4) implausible or inconsistent explanations of behavior; (5) concealing assets; and (6) failure to cooperate with tax authorities.  Spies v. United States, 317 U.S. 492, 499 (1943); Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601.

But we begin with what we think is the most important bit of evidence in support of the Commissioner's position:  In their criminal plea agreements, Mr. Chen admitted that he conspired to commit fraud and Mrs. Chen admitted to "act[ing] with a specific intent to commit fraud."  They also both pleaded guilty under section 7206(1) to willfully filing their 1998 income tax return knowing it was false because it did not include the proceeds of their fraud.  (We specifically note, with regard to Mrs. Chen, that the plea agreement has a certificate of accurate translation and that Mrs. Chen did not attack her consent to the plea agreement.)

It is true that this is not enough for the Commissioner to win on this issue through collateral estoppel--the fraud penalty requires proof of an intent to evade taxes, and we held in Wright v. Commissioner, 84 T.C. 636, 643 (1985), that a conviction under section 7206(1) establishes as a matter of law only an intent to falsify a tax return.  But a conviction for willful falsification

under section 7206(1) is certainly one of the facts to be considered in deciding whether the Chens committed tax fraud. See id. at 643-644; see also Welker v. Commissioner, T.C. Memo. 1997-472.  And the Chens' specific acknowledgment of fraud in the plea agreements certainly weighs against their claims of innocence now.

But even without the acknowledgment of fraud and the guilty plea, the badges of fraud in this case are plain:

! Mr. Chen intentionally submitted a false claim of loss to Chubb Insurance;

! he concealed receipt of the resulting fraud proceeds from his tax preparer;

! the Chens' testimony is replete with contradictory claims, ranging from Mr. Chen's claim to know nothing about the financial aspect of the business--"I really [am] not too much concern[ed] about the finance[s], you know, I [am] just a super-sales[man] only", while later claiming the opposite--"I am like a dictator in the company;" to saying that he "never touch[ed] the money flow and accounting issues * * * [or paid] too much attention in this issue", only to testify in answer to the question "[D]id you tell the accountant what to do?", "Yes"; to Mrs. Chen's testimony both that she herself deposited the $287,000 into the fake Beam account and that Ms. He did;[2]

! implausible explanations--to take one example, Mr. Chen said he intended to split the insurance proceeds with Beam's owner.  Yet Mr. Chen never gave him any money,

--------------------------

[2] Such inconsistency cannot be chalked up to bad memory or simple misunderstanding, as the Chens argue.  The flip-flops are too numerous to discount, and the Court made sure that translators were available at trial to guarantee that the Chens understood the questions being asked.

arguing at one point that he kept the whole $287,000 to cover a gambling loan of only $7,000; and

**!** concealment of assets--when Mr. Chen received the reimbursement check from Chubb, he directed his wife to open a fake account for Beam, into which he deposited the proceeds.

The Chens' counterargument is that despite these telltale signs of fraud, they should be spared the penalty because they cooperated with the IRS, kept company records, filed their tax returns, etc. However, these actions are not enough to overcome the substantial evidence of fraudulent intent to evade tax on the ill-gotten insurance proceeds. Nor is the Court able to rely on PCTI's records in the face of credible evidence that those records were created to cover up the Chens' fraud by making it seem to be a payment on an account receivable. We conclude that the Commissioner has met his burden of proving fraud by clear and convincing evidence.

There is no statute-of-limitations problem in this case. See sec. 6501(c)(3).

## II. Innocent Spouse Relief

The Chens eloquently argued at trial that Mr. Chen was the more guilty party--and the Court does find that he was the architect of the fraud at issue. It was also his gambling compulsion that motivated Mrs. Chen to help him move the stolen money in and out of her account. The Chens argue from this lesser culpability that Mrs. Chen should be relieved from joint

liability for the deficiency.  Section 6015 allows relief from joint and several liability on three grounds:  subsection (b) lets a spouse seek relief if she can show that she neither knew, nor had reason to know, of an understatement on the return; subsection (c) lets divorced or separated spouses split their tax liability; and subsection (f) allows relief where "it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion thereof)."

Mrs. Chen's first problem is section 1.6015-1(d), Income Tax Regs., applicable to all these subsections.  It provides:

> If the Secretary establishes that a spouse
> transferred assets to the other spouse as
> part of a fraudulent scheme, relief is not
> available under section 6015 * * *.  For
> purposes of this section, a fraudulent scheme
> includes a scheme to defraud the Service or
> another third party * * *

We hold that this section alone supports the Commissioner's refusal to grant Mrs. Chen innocent spouse relief under any subsection of section 6015--Mrs. Chen admitted, after all, to helping to defraud Chubb, "another third party."

As alternative grounds, however, we discuss each of the two subsections that Mrs. Chen relies on.

A.   <u>Section 6015(b) Relief</u>

Section 6015(b) requires, among other elements, the spouse asking for relief to prove that "in signing the return, * * * [she] did not know, and had no reason to know, that there was

such an understatement." Sec. 6015(b)(1)(C). Mrs. Chen's claim for relief under subsection (b) turns on whether she can prove this.[3] She argues that, despite her status as an officer of PCTI, hers was only a clerical position giving her no comprehension of what was happening when she signed corporate checks and documents. She says that she just signed whatever Mr. Chen or Ms. He gave her without asking questions. Mrs. Chen's limited English skill is a fact that would seem to support her position.

But the regulations interpreting subsection (b) direct us to look at "all of the facts and circumstances." Sec. 1.6015-2(c), Income Tax Regs. And there are other facts weighing against relief. Perhaps most damning is Mrs. Chen's admission of guilt in committing wire fraud, filing a false tax return, and aiding and abetting her husband to launder money. Mrs. Chen's plea agreement, which she signed, specifically indicated that she "acted with a specific intent to commit fraud." Even though Mrs. Chen is not as well educated as her husband, she was too deeply involved to be characterized as playing an unsuspecting dupe in his fraud. We also do not give much weight to Mrs. Chen's inability to communicate in English. PCTI's office was staffed

---

[3] Petitioners have the burden of proof under section 6015(b), but need only persuade us by a preponderance of the evidence rather than that the Commissioner abused his discretion. See Haltom v. Commissioner, T.C. Memo. 2005-209.

with Chinese speakers, and we infer from the evidence and observation during trial that the Chens simply worked together in Chinese. We find that Mrs. Chen knew exactly what she was doing when she wrote Mr. Chen a $50,000 check to cover some of his gambling debts. The regulations direct us to look, not at whether a spouse requesting relief knows specifically of the understatement (as the Chens argue), but at whether "the requesting spouse had actual knowledge of an erroneous item." Sec. 1.6015-3(c)(2)(i), Income Tax Regs., incorporated by sec. 1.6015-2(c), Income Tax Regs. The regulation specifically directs us to look at whether the spouses "jointly owned the property that resulted in the erroneous item," sec. 1.6015-3(c)(2)(iv), Income Tax Regs., and the situation here is even more egregious since Mrs. Chen had sole power and control of the fake Beam account.

We therefore conclude, after considering all these facts and circumstances, that Mrs. Chen knew of Mr. Chen's fraud when she signed the joint tax return for 1998. She is not entitled to relief under subsection (b).

B.   Section 6015(f) Relief

Mrs. Chen also argues for relief under subsection (f), arguing that it would be inequitable to hold her liable for the unpaid tax.[4]  Rev. Proc. 2003-61, 2003-2 C.B. 296,[5] sets out

---

[4] Our jurisdiction to review Mrs. Chen's claim for
                                        (continued...)

general conditions a requesting spouse *must* meet in order to be eligible for subsection (f) relief.  One of these is the absence of fraudulent transfers of assets between the spouses.  As we have already found, the Chens transferred assets back and forth between Mrs. Chen, Mr. Chen, and PCTI in order to hide the trail of fraud, and this enabled Mrs. Chen to give $50,000 to Mr. Chen to cover some of his gambling losses.  Moreover, Mrs. Chen admitted that she acted with fraudulent intent.  This means that the Commissioner did not abuse his discretion in concluding that she did not qualify for (f) relief.[6]

III. Amount of Deficiency

The only remaining issue is the amount of the deficiency, which the Chens argue should not reflect the full amount of the

---

[4](...continued)
subsection (f) relief stems from the existence of an assertion of a deficiency in this case.  Compare Commissioner v. Ewing, 439 F.3d 1009 (9th Cir. 2006) (no Tax Court jurisdiction when no deficiency involved), revg. 122 T.C. 32 (2004) with Butler v. Commissioner, 114 T.C. 276, 288 (2000) (Tax Court does have jurisdiction when 6015(f) relief is sought as defense to deficiency).

[5] This new revenue procedure replaced Revenue Procedure 2000-15, 2000-1 C.B. 447, and became effective on November 1, 2003, for all pending or subsequently filed requests for relief. The principal change in the new IRS guidance is revision of the weight given to the knowledge factor.  See Baumann v. Commissioner, T.C. Memo. 2005-31.

[6] The standard of review we apply differs between section 6015(b) and (f) cases. In section 6015(f) cases, we review the Commissioner's denial of relief for abuse of discretion.  Butler v. Commissioner, 114 T.C. 276, 292 (2000).

stolen insurance money.  The Chens are certainly right about part of this.  Of the $287,000 deposited into the Beam account, $154,409 was transferred to PCTI, with $140,372 applied to a Citirom receivable.  The Commissioner concedes that $14,037 of the proceeds was reported by PCTI, and thus flowed through to the Chens in 1998, leaving $272,963 in unreported income.[7]  The Chens argue, however, that the $154,409 that they transferred to PCTI after a short detour through the fake Beam account should be regarded as PCTI's income, not their own.

The problem with this argument is that PCTI was an S corporation, and an S corporation's income is generally taxable to its owners, not to the corporation itself, sec. 1363(a); and whether or not the income is distributed, sec. 1366(a).  In any event, the Chens never identified any exception to the general rules making PCTI's income taxable to them.  The $140,372 is therefore income to the Chens in 1998, and the IRS is right that the total amount of unreported income is $272,963.

The Chens also argue that if the insurance proceeds had not been misapplied by PCTI's accountant to wipe out one of Citirom's outstanding accounts receivable, PCTI would have been entitled to a bad debt deduction for $140,372 on its 1998 return.  The Citirom receivable was held by PCTI and so flowed through to the

---

[7] The Commissioner's concession is derived by subtracting the total transferred back to PCTI from the amount applied to the Citirom account ($154,409 - $140,372 = $14,037).

Chens; this meets the Code's requirement of a debt relating to a business activity.  Because the debt is a business one, the Chens could deduct it if they proved the other elements of a bad debt deduction:  (1) a valid debtor-creditor relationship; (2) the amount of the debt; (3) its worthlessness; and (4) the year it became worthless.  See Davis v. Commissioner, 88 T.C. 122, 142 (1987), affd. 866 F.2d 852 (6th Cir. 1989).

We have no reason to doubt that Citirom and PCTI had a valid debtor-creditor relationship.  The Chens also proved the amount of the receivable through PCTI's business records.  So far, so good.  However, they stumble over the last two hurdles: worthlessness, and worthlessness in 1998.  Mr. Chen did credibly testify that PCTI had trouble collecting from Citirom in 1998, but though Citirom was a slow payer, it did continue to make payments throughout the year on a number of other outstanding invoices.  A taxpayer's "mere belief" that a debt is worthless won't support a deduction.  Fox v. Commissioner, 50 T.C. 813, 822-823 (1968), affd. per curiam 25 AFTR 2d 70-891, 70-1 USTC par. 9373 (9th Cir. 1970); sec. 1.166-2, Income Tax Regs.  We look instead for facts that establish reasonable grounds for abandoning any hope of recovery--proof of the customer's insolvency, a description of action taken to recover the debt, or an explanation of why no action was taken.  Fincher v. Commissioner, 105 T.C. 126, 137-138 (1995); Crown v.

Commissioner, 77 T.C. 582, 598 (1981).  The Chens did not do this and so cannot offset their 1998 gross income with a business bad debt deduction.

## Conclusion

We reject each of the Chens' arguments.  Because of the fraud involved, the IRS has no time limit for assessing the unpaid tax, so the statute of limitations had not passed. Unreported income of $272,963 was omitted from the Chens' 1998 return.  The Chens are liable for the fraud penalty due to their intentional failure to report the insurance proceeds.  And finally, Mrs. Chen does not qualify for innocent spouse relief. To reflect the Commissioner's concession, however,

Decision will be entered under

Rule 155.